IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RETAILMENOT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No _____ |
| | ) | |
| HONEY SCIENCE CORP., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff RetailMeNot, Inc. ("RetailMeNot") for its complaint against Defendant Honey Science Corp. ("Honey"), alleges as follows:

## NATURE OF THE ACTION

1.     This is an action arising under the patent laws of the United States, 35 U.S.C. §§ 271, *et seq.*, to enjoin infringement and obtain damages resulting from Defendant's unauthorized making, using, offering for sale, and/or selling software and/or services through its website and/or browser extensions, including related software and services.

2.     RetailMeNot is a leading savings destination that enables consumers to find hundreds of thousands of offers to save money while they shop or dine out.  RetailMeNot operates a portfolio of websites and mobile applications that connect consumers with online and in-store retailers, restaurants, and brands.  RetailMeNot is also the developer of innovative online technologies, including inventions covered by U.S. Patent No. 9,626,688 ("the '688 Patent"); U.S. Patent No. 9,639,853 ("the '853 Patent"); U.S. Patent No. 9,953,335 ("the '335 Patent"); and U.S. Patent No. 9,965,769 ("the '769 Patent"); (collectively, the "Patents-in-Suit").

3.     Honey offers a website, browser extensions, and related software and services (the "Infringing Products") that infringe the Patents-in-Suit.

## THE PARTIES

4.      RetailMeNot is a private corporation organized and existing under the laws of Delaware, having its principal place of business in Austin, Texas.  Among other activities, it is in the business of aggregating digital offers (*e.g.*, digital coupon codes, discounts, and rebates) on its websites and through its mobile applications, thereby enabling its users to take advantage of digital offers at the online point of retail.  RetailMeNot has customers throughout the United States, the State of Delaware, and in this District.

5.      Upon information and belief, Honey is a corporation organized and existing under the laws of Delaware, having its principal place of business in Los Angeles, California.  Honey practices and provides, contributes to practicing and providing, and induces others to practice and provide methods and systems that infringe claims of each of the Patents-in-Suit.

## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the patent laws of the United States, Title 35 United States Code, including 35 U.S.C. §§ 1, *et seq.*  This complaint includes claims for patent infringement arising under the patent laws of the United States, including 35 U.S.C. §§ 271, *et seq.*

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1400(b), because, upon information and belief, Honey is a corporation organized and existing under the laws of the State of Delaware and thus resides in this district.

8.      This Court has personal jurisdiction over Honey because, upon information and belief, Honey is a corporation organized and existing under the laws of the State of Delaware and thus has sufficient minimum contacts with this forum.

## FACTUAL BACKGROUND

**A.     RetailMeNot's History and Business**

9.      RetailMeNot is the preeminent online savings destination.  Since 2006, it has connected millions of consumers to more than 70,000 online and in-store retailers, brands, and restaurants.  Through its investment in innovative new solutions for driving return on investment for merchant partners and satisfying consumers, RetailMeNot has become the go-to destination for digital offers.  RetailMeNot facilitated $4.8 billion in global sales in 2017 and had 667 million visits to its website in the twelve months ending in May 2018.

10.     Throughout the years, RetailMeNot has invested significant resources in protecting its intellectual property through the development of patent and other intellectual-property rights.  For example, RetailMeNot devoted over $65 million to product development efforts in a recent year, and currently has a team of over 225 product development and software engineering employees devoted to developing new and innovative ways to connect customers and merchants.

11.     As a result, RetailMeNot has a history of introducing groundbreaking products and offerings in the retail space.  RetailMeNot's market-leading website has been in operation since 2006, and its highly rated mobile applications have been saving customers money using location-based technology since 2012.  These innovations have earned RetailMeNot's products recognition from Good Housekeeping and the International Academy of Digital Arts and Sciences.  True and accurate copies of press releases related to such recognition are attached hereto as Exhibit A.

**B.     U.S. Patent No. 9,626,688**

12.     The '688 Patent, titled "Method and system for facilitating access to a promotional offer," relates to, among other things, improving client-server interactions by executing script or code within a web browser application to copy a promotional code from a secure sandbox to user-accessible memory and programmatically direct the client to navigate via a third-party content-distribution-tracking server to a content-sharing website server.  A true and accurate copy of the '688 Patent is attached hereto as Exhibit B.  In one disclosed embodiment, the method includes, among other steps, sending program code to the client device that is executed to provide a scripting object permitted by the browser to copy the promotional code from a secure sandbox to user-accessible memory of the client device.  Figure 2 of the '688 Patent illustrates an example display of a promotion offer according to some embodiments:



13.     The invention claimed by the '688 Patent improves computer technologies by solving technical problems associated with providing, redeeming, and tracking electronic coupon redemption information in a web browser environment.

14.     Web browsers typically isolate web content and plug-ins or extensions from the operating system of a computing device for security reasons.  This technique, often called "sandboxing," prevents malicious programs from accessing sensitive information or executing

arbitrary code in the operating system.  Sandboxing, however, also limits beneficial activity, such as assisting online shoppers with the viewing and selection of promotional offers—*e.g.*, coupons or rebates—and the automatic application of those offers to purchases at merchants' online stores.

15.     Due to web browser sandboxing, the process of applying a promotional offer to a purchase would normally require the steps of manually selecting and copying coupon codes before manually navigating to the appropriate merchant's checkout webpage.  Moreover, taking advantage of promotional offers often requires passing information through one or more affiliate or referral networks, of which the user may be unaware and would therefore be unable or unwilling to navigate them manually.  Consequently, coupon-usage and commission-payment rates prior to the invention disclosed in the '688 Patent were hampered by technical limitations and navigational difficulties.

16.     The inventor of the '688 Patent observed that client-side scripting could be used to overcome the limitations inherent in web browser sandboxing.  Specifically, the inventor discovered that a flash object or other scripting object could provide the user with the same user experience as simply selecting a promotional offer code, while also permitting the coupon code to be automatically copied from the browser's secure sandbox to the client's user-accessible clipboard memory for immediate use.  Moreover, the inventor had the insight that offer-redemption and commission or referral rates would dramatically increase if the selection of a promotional offer were accompanied by automatic direction of the client's browser through the appropriate affiliate- or referral-network to the relevant merchant.

17.     To achieve this solution, the '688 Patent discloses a method of copying a promotional code to the user's clipboard using client-side scripts executable in a browser

application, avoiding the limitations imposed by web browser sandboxing without requiring the user to manually select and copy a promotion offer code.  Additionally, the '688 Patent discloses automatic requests sent to third-party servers that track content distribution and to content author websites, ensuring that the user properly navigates to the relevant merchant via an affiliate or referral network.  This provides the user with greater convenience, requires less navigational effort, and results in higher rates of offer redemption; it also provides merchants and affiliate or referral market participants with increased sales and commissions.

18.    Claim 1 of the '688 Patent recites:

1.  A system configured to operate a content-sharing website in a network in which a third party server tracks content distribution, the content-sharing website facilitating content engagement by serving instructions that when executed on a client computing device effectuate loading a user selected content code into a clipboard memory of the client computing device for pasting into an input of a content author website, the system comprising:

one or more processors; and

memory storing instructions that when executed by the one or more processors effectuate operations comprising:

receiving, from a client computing device, at a content-sharing website server, one or more serve requests for web content items;

sending, in response to the one or more serve requests, from the content-sharing website server, the web content items to the client computing device;

receiving, with the client computing device, the web content items;

executing, with the client computing device, instructions included with the web content items and thereby effectuating operations comprising:

displaying a web-page specified by the web content item at the client computing device in a browser application of the client computing device, the web-page having a content item comprising:

a display portion overlaid with a coupon code and a flash object or other object having associated therewith script or code permitted by the browser application to copy characters to a clipboard memory of the client computing device,

a description of the content, and

a feedback portion indicative of historical user's views on the content;

receiving a selection of the flash object or other object by a user;

after receiving the selection of the flash object or other object by the user, automatically performing steps comprising:

copying the coupon code from within a secure sandbox of the browser application to the clipboard memory of the client computing device, the copying to the clipboard memory being caused at least in part by the selection of the flash object or other object; and

sending a second serve request from the client computing device to the content-sharing website server, the second serve request including an identifier of the content item having the selected object;

after receiving the second serve request, at the content-sharing website server, sending to the client computing device a uniform resource locator (URL) of a third-party server that tracks content distribution and instructions that direct the client computing device to the URL of the third party server and instructions that when executed by the client computing device effectuate operations comprising:

sending a third serve request to the third party server addressed by the URL, wherein the third serve request identifies the content-sharing website to the third party server, such that the third party server receives information sufficient to cause the third serve request to be associated with the content-sharing website by an author of the content item;

receiving, from the third party server instructions that direct the client computing device to a content author website to which the content item pertains; and

displaying the content author website on the client computing device, the content author website including a field to enter the coupon code, while displaying the content author website, the coupon code remains in clipboard memory of the client computing device such that, after receiving direction from the user, the client computing device is operative to paste the coupon code from the clipboard memory of the client computing device into the field to provide the coupon code to the content author website.

19.     The United States Patent Office duly and lawfully issued the '688 Patent on April 18, 2017, based on U.S. Patent Application No. 14/081,072, which was filed on November 15, 2013, and is a continuation of Application No. 13/585,576, which was filed on August 14, 2012, and is itself a continuation of Application No. 12/841,071, which was filed on July 21, 2010, and claims priority to Provisional Application No. 61/232,241, which was filed on August 7, 2009.

20.     RetailMeNot is the assignee of and owns all rights, title, and interest in the '688 Patent.

21.     The '688 Patent is valid and enforceable.

**C.     U.S. Patent Nos. 9,639,853; 9,953,335; and 9,965,769**

22.     The '853, '335, and '769 Patents, all titled "Devices, methods, and computer-readable media for redemption header for merchant offers," relate to, among other things, improving client-server interactions by executing script or code within a browser application to locally store a selected promotional code, detect the presence of stored promotional codes, and render web page elements in a third-party web page to facilitate redemption of promotional codes.   True and accurate copies of the '853, '335, and '769 Patents are attached hereto as Exhibits C, D, and E, respectively.   In disclosed embodiments, the claimed invention includes, among other steps, injecting browser-executable code comprising a redemption header into a merchant webpage if an offer selected by the user is stored in a storage item accessible by the browser.   Figure 4E of the common specification illustrates an example display of a redemption header according to some embodiments:



23.     The '853, '335, and '769 Patents are directed to specific improvements in computer technologies related to cross-web-domain interactions via a web browser.

24.     Specifically, the "same-origin policy" of nearly all modern browsers prevents scripts contained in one web page from accessing data in a second web page unless both pages share the same origin, typically requiring the same protocol, host, and port.  This essential security feature ensures sensitive data in a web page from one origin (*e.g.*, a bank) is not accessible to a web page from another origin (*e.g.*, a hacker).  However, the same-origin policy could also operate to prevent a merchant website from determining whether an online shopper has a relevant coupon obtained from another origin, such as a separate offers webpage.  Prior to the inventions disclosed in the '853, '335, and '769 Patents, customers typically had to recall the existence of relevant coupons when shopping on a merchant's website, as the merchant website would be barred by the same-origin policy from determining whether the user had obtained promotional offer codes from another source, such as an offer-discovery website.

25.     The inventors of the '853, '335, and '769 Patents had the insight that client-side browser storage and scripting could overcome the problems inherent in browser "same-origin" security policies.  Specifically, the inventors discovered that using client-side scripting to insert a redemption bar including relevant offer identifiers into a merchant's webpage upon determining the presence of a locally stored offer identifier would make the promotional offer available to the customer at the point of purchase without requiring the merchant website to traverse the "same-origin" browser security policy.  Moreover, the inventors had the insight that inserting a redemption bar at the point of purchase would dramatically increase offer-redemption and commission or referral rates.

26.     The claimed inventions of the '853, '335, and '769 Patents overcome issues arising in cross-domain web content coordination by employing client-side browser storage.  The claimed methods recite operations that address these issues, which are necessarily rooted in computer technology.  These improvements enable users to access the relevant offers at the point of purchase, resulting in greater convenience, less navigational effort, and higher rates of offer redemption.  Merchants and affiliate or referral market participants likewise benefit with increased sales and commissions.

27.     Claim 1 of the '853 Patent recites:

1.  A computer-implemented method, comprising:

    providing in a browser executing on a user device an offers webpage from an offers engine at a first website domain, the offers webpage comprising a plurality of electronic coupons associated with a respective plurality of merchants and a respective plurality of offer redemption identifiers;

    receiving a selection of one of the plurality of offers, the selected offer being associated with a selected offer redemption identifier and a selected merchant;

    directing the browser to a merchant webpage of the selected merchant at a second website domain different from the first website domain;

determining, after directing the browser to the merchant webpage, that an offer identifier associated with the selected offer is stored in a storage item accessible by the browser in browser memory, wherein the offer identifier is stored in the storage item before directing the browser to the merchant webpage of the selected merchant at the second website domain; and

inserting, with one or more processors, a redemption bar in a webpage element of the merchant webpage upon determining that the offer identifier is stored in the storage item, the redemption bar including the offer redemption identifier associated with the selected offer, the redemption bar being displayed on the merchant webpage.

28.     Claim 1 of the '335 Patent recites:

1.   A tangible, non-transitory, machine-readable medium storing instructions that when executed by one or more processors effectuate operations comprising:

sending, with one or more processors, via a network, from a first domain, at least part of a first webpage to a web browser executing on a user computing device, wherein sending the at least part of the first webpage comprises:

causing the web browser to obtain and display a plurality of content items in the first webpage, each of the content items being associated in the web browser with a content-item identifier that distinguishes the content items from one another;

sending, with one or more processors, via the network, from the first domain, instructions that cause the web browser to store in client-side browser-accessible storage a given content-item identifier associated with a given content item selected by a user in the first webpage, the storing being executed in response to receiving the selection of the given content item in the first webpage by the user; and

after sending the at least part of the first webpage, and after the selection of the given content item is received, coordinating, with one or more processors, consistent content across domains after the web browser navigates to a second webpage from a second domain different from the first domain, wherein consistent content across domains is coordinated by:

communicating the selection of the given content item by the user across domains via the client-side browser-accessible storage, from content associated with the first domain to content associated with the second domain, by accessing the client-side browser-accessible storage after the web browser has navigated to the second web page; and

causing the web browser to display the second webpage concurrently with displaying information related to the given content item in response to the selection of the given content item being communicated across domains,

wherein causing the web browser to display the second webpage concurrently with displaying information related to the given content item comprises:

inserting browser-executable code of a redemption bar in a merchant webpage after the merchant webpage is provided to the web browser, wherein the merchant webpage is the second webpage.

29.     Claim 1 of the '769 Patent recites:

1.  A tangible, non-transitory, machine-readable medium storing instructions that when executed by one or more processors effectuate operations comprising:

sending, with one or more processors, via a network, from a first domain, at least part of a first webpage to a web browser executing on a user computing device, wherein sending the at least part of the first webpage comprises:

causing the web browser to obtain and display a plurality of content items in the first webpage, each of the content items being associated in the web browser with a content-item identifier that distinguishes the content items from one another;

causing, with one or more processors, the web browser to store in client-side browser-accessible storage at least some of the content items, wherein:

the web browser executing on the user computing device is caused to store the at least some of the content items in response to a user input to the web browser;

the web browser executing on the user computing device implements a security policy prohibiting web content from cross-domain access to browser memory;

the web browser executing on the user computing device has an added program installed in the web browser configured to bypass the security policy and provide cross-domain access to browser memory; and

the added program installed in the web browser stores the at least some of the content items in the client-side browser-accessible storage;

after sending the at least part of the first webpage, and after the user input to the web browser is received, coordinating, with one or more processors, consistent content across domains after the web browser navigates to a second webpage from a second domain different from the first domain, wherein consistent content across domains is coordinated by:

communicating the at least some of the content items across domains via the client-side browser-accessible storage, from content associated with the first domain to content associated with the second domain, by accessing, with the added program installed in the web browser, the client-side browser-accessible storage after the web browser has navigated to the second web page; and

causing the web browser to display the second webpage concurrently with displaying information related to the at least some of the content items in response to the at least some of the content items being communicated across domains, wherein causing the web browser to display the second webpage concurrently with displaying information related to the at least some of the content items comprises:

inserting browser-executable content of a redemption bar in a merchant webpage after the merchant webpage is provided to the web browser, wherein the merchant webpage is the second webpage.

30.     The Patent Office duly and lawfully issued the '853 Patent on May 2, 2017, based on Application No. 13/837,790, which was filed on March 15, 2013, and claims priority to, among others, Provisional Application No. 61/665,740, which was filed on June 28, 2012.

31.     The Patent Office duly and lawfully issued the '335 Patent on April 24, 2018, based on Application No. 15/471,682, which was filed on March 28, 2017, and is a continuation of Application No. 13/837,790, and claims priority to, among others, Provisional Application No. 61/665,740, which was filed on June 28, 2012.

32.     The Patent Office duly and lawfully issued the '769 Patent on May 8, 2018, based on Application No. 15/853,016, which was filed on December 22, 2017, and is a continuation of Application No. 15/471,682, which was filed on March 28, 2017, and is a continuation of Application No. 13/837,790, and claims priority to, among others, Provisional Application No. 61/665,740, which was filed on June 28, 2012.

33.     RetailMeNot is the assignee of and owns all rights, title, and interest in the '853, '335, and '769 Patents.

34.     The '853, '335, and '769 Patents are valid and enforceable.

**D.     Honey's Business**

35.     Upon information and belief, Honey was founded in 2012.  According to its website, Honey offers a browser extension that "automatically finds and applies coupon codes at checkout" for online retail stores.  A true and accurate copy of pages from Honey's website is

attached hereto as Exhibit F.  Honey offers the Honey extension for all of the most commonly used web browsers, including Chrome, Firefox, Safari, Opera, and Edge.  *See, e.g.*, Ex. F, at 10–16.  In addition to offering users the opportunity to apply coupon codes at checkout, Honey also operates the Honey Gold Reward Program, which allows users to activate rewards in the form of a digital currency called "Honey Gold."  *See id*. at 17–24.  Honey Gold is redeemable for rebates and coupons at participating merchants.  *See id.* at 19–20.

36.    According to its website, Honey earns commissions from merchants when its members use coupon codes or earn Honey Gold via the Honey website and browser extensions. *See id*. at 25.

37.    Honey is a direct competitor of RetailMeNot, and on information and belief, RetailMeNot is one of Honey's largest competitors in terms of revenue, market share, and/or customer base.

**E.    Honey's Infringement**

38.    Honey's infringing acts include, without limitation, providing the Honey website at https://www.joinhoney.com, the Honey extension for the Google Chrome browser, the Honey add-on for the Mozilla Firefox browser, the Honey add-on for the Opera browser, the Honey extension for the Apple Safari browser, and the Honey extension for the Microsoft Edge browser, in combination with related software and services under Honey's ownership or control and necessary to facilitate the functioning of the foregoing.

39.    The infringing features of Honey's website, browser extensions, and related software and services include, without limitation, the display of coupon, discount, rebate, and reward offers on third-party websites and the activation and copying of coupon, discount, rebate, and coupon codes on Honey and third-party websites.

14

i.       The '688 Patent

40.     Honey infringes the '688 Patent by, among other activities, making and using the Honey website at "https://www.joinhoney.com" in conjunction with servers, software, and other resources that comprise the Honey system.   For example, Honey provides a content-sharing website server that receives serve requests for web content items from a client, and in response sends web content items to client computing devices.   The web content received by the client devices includes instructions that effectuate displaying web content comprising a display portion overlaid with a coupon code, as shown in the following screenshot, which is a true and accurate depiction of the operation of the Honey website:



41.     Furthermore, the display portion is overlaid with a button that is associated with a script that copies the coupon code to the client's clipboard, and a feedback portion indicating historical user views of the content, as required by the claims of the '688 Patent.

42.     The Honey system copies the coupon code from a secure sandbox of the browser to the clipboard memory of the client computing device, as shown in the following screenshot, which is a true and accurate depiction of the operation of the Honey website:



43.     The Honey system sends a serve request to the content-sharing website server (*i.e.*, "joinhoney.com") that includes an identifier of the content item having the selected object, as shown by the following HTTP request, which is a true and accurate depiction of data requested of the Honey website:

```
GET /evs HTTP/1.1
Host: s.joinhoney.com:443
Accept: image/webp,image/apng,image/*,*/*;q=0.8
Accept-Encoding: gzip, deflate, br
Accept-Language: en-US,en;q=0.9
Cookie: AID=AJHaeXIo-6zSVcyLEhmF517ft1bTohGlh-mxySYb1N7ABN1qUxDdSA; HSID=AUtQMvaB4rylCDx75;
Referer: https://www.joinhoney.com/shop/walgreens-photo?code=JUNE30&hasOpened=1
User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko)
```

44.     Next, the Honey system sends instructions to effectuate sending another serve request to a third-party server that tracks content distribution with identifying information sufficient to associate the serve request with the content-sharing website.  For example, the Honey website redirects the user via an affiliate network link containing a unique identification number that corresponds to Honey, as shown by the following HTTP requests, which are true and accurate depictions of data requested by users of the Honey website:

```
GET /click-7229499-10824661?sid=8005927094384138823&url=http%3A%2F%2Fphoto.walgreens.com%2F HTTP/1.1
Host: www.anrdoezrs.net
Accept: text/html,application/xhtml+xml,application/xml;q=0.9,image/webp,image/apng,*/*;q=0.8
Accept-Encoding: gzip, deflate
Accept-Language: en-US,en;q=0.9
Upgrade-Insecure-Requests: 1
User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/


GET /tr67qgpo6/gns/54C68AA5/B66D8DD/4/4/4?x=xtje%3D9116A381A5495249934%26vsm%3Diuuq%254B%253G%253Gqi
Host: cj.dotomi.com
Accept: text/css,*/*;q=0.1
Accept-Encoding: gzip, deflate, br
Accept-Language: en-US,en;q=0.9
If-Modified-Since: Mon, 31 Mar 2014 08:42:41 GMT
If-None-Match: "8105lbco2cflbedf378224b0a95e2877"
Referer: https://www.joinhoney.com/shop/walgreens-photo?code=JUNE30&hasOpened=1
User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/
```

45.     Finally, the Honey system directs the client to a content author website including a field to enter a coupon code which remains in clipboard memory of the client computing device, which is operative to paste the coupon code from the clipboard into the coupon code field.  For example, after the user selects the Copy button object, the Honey system redirects the user to a merchant website where the coupon code can be pasted in order to receive the

associated discount or rebate, as shown in the following screenshot, which is a true and accurate depiction of the operations resulting from use of the Honey website:



46.     Honey induces its users to infringe the '688 Patent by, among other activities, making the Honey website at "https://www.joinhoney.com" available to its users, who use and obtain benefits from using Honey's infringing system, such benefits including without limitation, access to coupon codes, online discounts, and cash-back rewards. *See, e.g.*, Ex. F, at 26. Honey is liable for contributory infringement by, among other activities, offering the Honey website for its users to use in practicing processes claimed by the '688 Patent, and receiving monetary commissions for users it refers to retailers. *See, e.g.*, *id.* at 25.

47.     The foregoing is exemplary of Honey's infringement and does not constitute a full recitation of RetailMeNot's contentions regarding Honey's infringement of the '688 Patent.

ii.     The '853 Patent

48.     Honey infringes the '853 Patent by, among other activities, making and using the Honey extension for the Google Chrome web browser. For example, the Honey extension provides an offers redemption webpage comprising a plurality of electronic coupons associated with a respective plurality of merchants and a respective plurality of offer redemption identifiers, as required by the claims and as shown by the following screenshots, are true and accurate depictions of the operation of the Honey extension:



49.     The Honey extension allows a user to select individual coupons, stores in browser-accessible memory offer identifiers associated with the coupons, and subsequently directs the user's browser to merchant websites, as required by the claims.  After directing the user's browser to merchant websites, the Honey extension determines whether offer identifiers associated with the selected offers are stored in browser-accessible memory, and inserts a redemption bar in the merchant webpage, as required by the claims and as shown in the screenshot below, which is a true and accurate depiction of the operation of the Honey extension:



50.     Honey induces its users to infringe the '853 Patent by, among other activities, making the Honey extension available to its users and actively encouraging its users to use and obtain benefits from using Honey's infringing system, such benefits including without limitation, access to coupon codes, online discounts, and cash-back rewards. *See, e.g.*, Ex. F, at 1–8, 17–23. Honey is liable for contributory infringement by, among other activities, offering the Honey extension for its users to use in practicing processes claimed by the '853 Patent, and receiving monetary commissions for users it refers to retailers. *See id.* at 25.

51.     The foregoing is exemplary of Honey's infringement and does not constitute a full recitation of RetailMeNot's contentions regarding Honey's infringement of the '853 Patent.

        iii.    The '335 Patent

52.     Honey infringes the '335 Patent by, among other activities, making and using the Honey extension for the Google Chrome web browser.  For example, Honey's servers send a part of a webpage to a browser running on a user device, and the web browser (*e.g.*, Google Chrome with the Honey extension for Google Chrome installed) obtains and displays a plurality of content items (such as coupons or other offers), each with content-item identifiers

distinguishing content items from one another.  The Honey extension enables the user to select a content item (for example, to "Activate" the "Honey Gold Rewards" offer), as required by the claim and as shown in the screenshot below, which is a true and accurate depiction of the operation of the Honey extension:



53.      After receiving the selection of an individual content item, the Honey extension for the Google Chrome browser navigates to a second webpage, communicates such selection across domains via client-side browser-accessible storage, and inserts a redemption bar with consistent content, as required by the claims and as shown in the screenshot below, which is a true and accurate depiction of the operation of the Honey extension:



54.     Honey induces its users to infringe the '335 Patent by, among other activities, making the Honey extension available to its users and actively encouraging its users to use and obtain benefits from using Honey's infringing system, such benefits including without limitation, access to coupon codes, online discounts, and cash-back rewards.  *See, e.g.*, Ex. F, at 1–8, 17–23. Honey is liable for contributory infringement by, among other activities, offering the Honey extension for its users to use in practicing processes claimed by the '335 Patent and receiving monetary commissions for users it refers to retailers.  *See, e.g.*, *id.* at 25.

55.     The foregoing is exemplary of Honey's infringement and does not constitute a full recitation of RetailMeNot's contentions regarding Honey's infringement of the '335 Patent.

        iv.     The '769 Patent

56.     Honey infringes the '769 Patent by, among other activities, making and using the Honey extension for the Google Chrome web browser.  For example, as required by the claims of the '769 patent, and as shown in connection with Honey's infringement of the '335 patent as shown above, Honey's servers send part of a webpage to a user device and the web browser obtains and displays a plurality of content items in a webpage.  Honey likewise enables the user

to select a content item, stores information in client-side browser-accessible memory, directs the browser to a second web page, and uses the stored information to coordinate consistent content across domains, as required by the claims of the '769 patent. In addition, Honey effectuates such operations in the case where the web browser (*e.g.*, Google Chrome) implements a security policy that prohibits web content from cross-domain access to browser memory, and in which an added program (*e.g.*, the Honey extension for Google Chrome) is installed in the web browser and configured to bypass such security policy, as required by the claims of the '769 patent.

57.    Honey induces its users to infringe the '769 Patent by, among other activities, making the Honey extension available to its users and actively encouraging its users to use and obtain benefits from using Honey's infringing system, such benefits including without limitation, access to coupon codes, online discounts, and cash-back rewards. *See, e.g.*, Ex. F, at 1–8, 17–23. Honey is liable for contributory infringement by, among other activities, offering the Honey extension for its users to use in practicing processes claimed by the '769 Patent and receiving monetary commissions for users it refers to retailers. *See, e.g.*, *id.* at 25.

58.    The foregoing is exemplary of Honey's infringement and does not constitute a full recitation of RetailMeNot's contentions regarding Honey's infringement of the '769 Patent.

v.    Honey's Knowledge and Willfulness

59.    RetailMeNot is informed and believes, and on that basis alleges, that Honey's continued infringement after having knowledge of the Patents-in-Suit is willful and deliberate. With such knowledge, the making, using, offering for sale, and/or selling the Infringing Products, and/or inducing and/or contributing to the infringement of the Patents-in-Suit by, among other activities, actively and knowingly aiding and abetting, assisting, and encouraging

others, including without limitation its members, customers, and end users of the Infringing Products and related and similar products is willful and deliberate.

**F.      Harm to RetailMeNot**

60.     RetailMeNot, as the sole owner and proprietor of all right, title, and interest in the Patents-in-Suit, develops and offers to consumers a portfolio of tools for displaying and enabling promotion offers, including its website at RetailMeNot.com, the Genie browser extension, and its mobile applications for the Apple iOS and Google Android platforms.  RetailMeNot's Genie extension automatically applies coupon codes and cash-back offers during the checkout process.

61.     Honey's offering of the Infringing Products has resulted in, and continues to cause, damages to RetailMeNot in at least the form of lost profits.  Merchants and affiliate networks typically only pay a commission to the single extension provider that ultimately refers the user to a merchant to make a purchase.  By earning commissions for each use of its website and browser extension, Honey is depriving RetailMeNot of commissions it would otherwise earn via the RetailMeNot.com website, the Genie extension, or its mobile applications for the Apple iOS and Google Android platforms.

62.     Upon information and belief, there is demand for the services offered by RetailMeNot, which demand RetailMeNot has the marketing capability to exploit, and there are no acceptable non-infringing alternatives available to Honey.

<u>**COUNT I – HONEY INFRINGES THE '688 PATENT**</u>

63.     RetailMeNot hereby incorporates the allegations of Paragraphs 1 through 62 as if fully set forth herein.

64.     RetailMeNot is informed and believes, and on that basis alleges, that Honey has infringed and is currently infringing one or more claims of the '688 Patent, in violation of 35 U.S.C. §§ 271, *et seq.*

65.     Honey infringes literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a), by, among other activities, making, using, offering for sale, and/or selling within this District and elsewhere in the United States, without license or authority, the Infringing Products, and related and similar products falling within the scope of one or more claims or the '688 Patent, including claim 1.

66.     RetailMeNot is informed and believes, and on that basis alleges, that Honey is currently infringing one or more claims of the '688 Patent, in violation of 35 U.S.C. § 271(b), by actively inducing infringement of the '688 Patent, at least as of the filing of this Complaint, with knowledge of the '688 Patent and with knowledge or willful blindness that it is inducing the infringement of the '688 Patent, by, among other activities, actively and knowingly aiding and abetting, assisting, and encouraging others, including without limitation its members, customers, and end users of the Infringing Products and related and similar products, to directly infringe the '688 Patent with respect to the making, using, offering for sale, and/or selling within this District and elsewhere in the United States, without license or authority, the Infringing Products and related and similar products falling within the scope of one or more claims of the '688 Patent, including claim 1.

67.     RetailMeNot is informed and believes, and on that basis alleges, that Honey is currently contributing to infringement of one or more claims of the '688 Patent, in violation of 35 U.S.C. § 271(c), at least as of the filing of this Complaint, with knowledge of the '688 Patent and with knowledge or willful blindness that the Infringing Products are especially adapted for

use in infringing the '688 Patent, by, among other activities, offering for sale and/or selling the Infringing Products and related and similar products, which constitute a material part of the invention falling within the scope of one or more claims of the '688 Patent.

68.     Honey's acts of infringement have caused damage to RetailMeNot in an amount to be proven at trial.   As a consequence of Honey's infringement, RetailMeNot is entitled to recover lost profits and other damages adequate to compensate it for the infringement complained of herein, but in no event less than a reasonable royalty.

69.     RetailMeNot has suffered and continues to suffer irreparable injury as a direct and proximate result of Honey's infringement for which there is no adequate remedy at law.   Unless Honey is enjoined, RetailMeNot will continue to suffer such irreparable injury as a direct and proximate result of Honey's conduct.

## COUNT II – HONEY INFRINGES THE '853 PATENT

70.     RetailMeNot hereby incorporates the allegations of Paragraphs 1 through 69 as if fully set forth herein.

71.     RetailMeNot is informed and believes, and on that basis alleges, that Honey has infringed and is currently infringing one or more claims of the '853 Patent, in violation of 35 U.S.C. §§ 271, *et seq*.

72.     Honey infringes literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a), by, among other activities, making, using, offering for sale, and/or selling within this District and elsewhere in the United States, without license or authority, the Infringing Products, and related and similar products falling within the scope of one or more claims or the '853 Patent, including claim 1.

73.     RetailMeNot is informed and believes, and on that basis alleges, that Honey is currently infringing one or more claims of the '853 Patent, in violation of 35 U.S.C. § 271(b), by actively inducing infringement of the '853 Patent, at least as of the filing of this Complaint, with knowledge of the '853 Patent and with knowledge or willful blindness that it is inducing the infringement of the '853 Patent, by, among other activities, actively and knowingly aiding and abetting, assisting, and encouraging others, including without limitation its members, customers, and end users of the Infringing Products and related and similar products, to directly infringe the '853 Patent with respect to the making, using, offering for sale, and/or selling within this District and elsewhere in the United States, without license or authority, the Infringing Products and related and similar products falling within the scope of one or more claims of the '853 Patent, including claim 1.

74.     RetailMeNot is informed and believes, and on that basis alleges, that Honey is currently contributing to infringement of one or more claims of the '853 Patent, in violation of 35 U.S.C. § 271(c), at least as of the filing of this Complaint, with knowledge of the '853 Patent and with knowledge or willful blindness that the Infringing Products are especially adapted for use in infringing the '853 Patent, by, among other activities, offering for sale and/or selling the Infringing Products and related and similar products, which constitute a material part of the invention falling within the scope of one or more claims of the '853 Patent.

75.     Honey's acts of infringement have caused damage to RetailMeNot in an amount to be proven at trial.  As a consequence of Honey's infringement, RetailMeNot is entitled to recover lost profits and other damages adequate to compensate it for the infringement complained of herein, but in no event less than a reasonable royalty.

76.     RetailMeNot has suffered and continues to suffer irreparable injury as a direct and proximate result of Honey's infringement for which there is no adequate remedy at law.  Unless Honey is enjoined, RetailMeNot will continue to suffer such irreparable injury as a direct and proximate result of Honey's conduct.

## COUNT III – HONEY INFRINGES THE '335 PATENT

77.     RetailMeNot hereby incorporates the allegations of Paragraphs 1 through 76 as if fully set forth herein.

78.     RetailMeNot is informed and believes, and on that basis alleges, that Honey has infringed and is currently infringing one or more claims of the '335 Patent, in violation of 35 U.S.C. §§ 271, *et seq*.

79.     Honey infringes literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a), by, among other activities, making, using, offering for sale, and/or selling within this District and elsewhere in the United States, without license or authority, the Infringing Products, and related and similar products falling within the scope of one or more claims or the '335 Patent, including claim 1.

80.     RetailMeNot is informed and believes, and on that basis alleges, that Honey is currently infringing one or more claims of the '335 Patent, in violation of 35 U.S.C. § 271(b), by actively inducing infringement of the '335 Patent, at least as of the filing of this Complaint, with knowledge of the '335 Patent and with knowledge or willful blindness that it is inducing the infringement of the '335 Patent, by, among other activities, actively and knowingly aiding and abetting, assisting, and encouraging others, including without limitation its members, customers, and end users of the Infringing Products and related and similar products, to directly infringe the '335 Patent with respect to the making, using, offering for sale, and/or selling within this District

and elsewhere in the United States, without license or authority, the Infringing Products and related and similar products falling within the scope of one or more claims of the '335 Patent, including claim 1.

81.    RetailMeNot is informed and believes, and on that basis alleges, that Honey is currently contributing to infringement of one or more claims of the '335 Patent, in violation of 35 U.S.C. § 271(c), at least as of the filing of this Complaint, with knowledge of the '335 Patent and with knowledge or willful blindness that the Infringing Products are especially adapted for use in infringing the '335 Patent, by, among other activities, offering for sale and/or selling the Infringing Products and related and similar products, which constitute a material part of the invention falling within the scope of one or more claims of the '335 Patent.

82.    Honey's acts of infringement have caused damage to RetailMeNot in an amount to be proven at trial.   As a consequence of Honey's infringement, RetailMeNot is entitled to recover lost profits and other damages adequate to compensate it for the infringement complained of herein, but in no event less than a reasonable royalty.

83.    RetailMeNot has suffered and continues to suffer irreparable injury as a direct and proximate result of Honey's infringement for which there is no adequate remedy at law.  Unless Honey is enjoined, RetailMeNot will continue to suffer such irreparable injury as a direct and proximate result of Honey's conduct.

## COUNT IV – HONEY INFRINGES THE '769 PATENT

84.    RetailMeNot hereby incorporates the allegations of Paragraphs 1 through 83 as if fully set forth herein.

85.     RetailMeNot is informed and believes, and on that basis alleges, that Honey has infringed and is currently infringing one or more claims of the '769 Patent, in violation of 35 U.S.C. §§ 271, *et seq.*

86.     Honey infringes literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a), by, among other activities, making, using, offering for sale, and/or selling within this District and elsewhere in the United States, without license or authority, the Infringing Products, and related and similar products falling within the scope of one or more claims or the '769 Patent, including claim 1.

87.     RetailMeNot is informed and believes, and on that basis alleges, that Honey is currently infringing one or more claims of the '769 Patent, in violation of 35 U.S.C. § 271(b), by actively inducing infringement of the '769 Patent, at least as of the filing of this Complaint, with knowledge of the '769 Patent and with knowledge or willful blindness that it is inducing the infringement of the '769 Patent, by, among other activities, actively and knowingly aiding and abetting, assisting, and encouraging others, including without limitation its members, customers, and end users of the Infringing Products and related and similar products, to directly infringe the '769 Patent with respect to the making, using, offering for sale, and/or selling within this District and elsewhere in the United States, without license or authority, the Infringing Products and related and similar products falling within the scope of one or more claims of the '769 Patent, including claim 1.

88.     RetailMeNot is informed and believes, and on that basis alleges, that Honey is currently contributing to infringement of one or more claims of the '769 Patent, in violation of 35 U.S.C. § 271(c), at least as of the filing of this Complaint, with knowledge of the '769 Patent and with knowledge or willful blindness that the Infringing Products are especially adapted for

use in infringing the '769 Patent, by, among other activities, offering for sale and/or selling the Infringing Products and related and similar products, which constitute a material part of the invention falling within the scope of one or more claims of the '769 Patent.

89.    Honey's acts of infringement have caused damage to RetailMeNot in an amount to be proven at trial.  As a consequence of Honey's infringement, RetailMeNot is entitled to recover lost profits and other damages adequate to compensate it for the infringement complained of herein, but in no event less than a reasonable royalty.

90.    RetailMeNot has suffered and continues to suffer irreparable injury as a direct and proximate result of Honey's infringement for which there is no adequate remedy at law.  Unless Honey is enjoined, RetailMeNot will continue to suffer such irreparable injury as a direct and proximate result of Honey's conduct.

## PRAYER FOR RELIEF

WHEREFORE, RetailMeNot respectfully requests that the Court enter judgment as follows:

A.    That Honey has directly infringed the Patents-in-Suit under 35 U.S.C. § 271(a);

B.    That Honey is inducing infringement of the Patents-in-Suit under 35 U.S.C. § 271(b);

C.    That Honey is a contributory infringer of the Patents-in-Suit under 35 U.S.C. § 271(c);

D.    That Honey and any of its affiliates, subsidiaries, officers, directors, employees, agents, representatives, licensees, successors, assigns, and all those acting for any of them and/or on any of their behalf, or acting in concert with any of them directly or indirectly, be permanently enjoined from infringing or inducing others to infringe the Patents-in-Suit;

E.     That Honey be ordered to pay compensatory damages to RetailMeNot, together with pre-judgment interest, post-judgment interest, and costs as allowed by law;

F.     That Honey be ordered to provide an accounting, including a post-verdict and post-judgment accounting for any infringement not otherwise covered by a damages award or the requested injunctive relief;

G.     That Honey be ordered to pay supplemental damages to RetailMeNot, including without limitation interest;

H.     That the infringement by Honey be adjudged willful and that the damages be increased under 35 U.S.C. § 284 to three times the amount found or measured;

I.     That the Court determine this is an exceptional case under 35 U.S.C. § 285 and an award of attorneys' fees and costs to RetailMeNot is warranted in this action; and

J.     For any such other and further relief as the Court deems just and equitable.

## JURY DEMAND

In accordance with Rule 38 of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a jury trial of all issues triable to a jury in this action.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com

*Attorneys for Plaintiff*

OF COUNSEL:

Robert A. Appleby
Jeanne M. Heffernan P.C.
Jon R. Carter
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022-4611
(212) 446-4800

June 25, 2018

31