IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RETAILMENOT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-937 (CFC) (MPT) |
| | ) | |
| HONEY SCIENCE CORP., | ) | |
| | ) | |
| Defendant. | ) | |

**STIPULATED ORDER REGARDING DISCOVERY**

The parties in the above-captioned case (collectively, the "Parties") agree and stipulate to the following procedures concerning discovery, including the identification and production of electronically stored information ("ESI"). Any procedure set forth herein may be varied only by order of the Court or written agreement of all Parties.

1. Definitions

    (a) The "Litigation" means the case captioned *RetailMeNot, Inc. v. Honey Science Corp.*, C.A. No. 18-937-CFC-MPT (D. Del. June 25, 2018).

    (b) "ESI" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001.

    (c) "Non-ESI" means any document or thing discoverable under Fed. R. Civ. P. 26(b)(1) and Fed. R. Civ. P. 34 that cannot be characterized as ESI.

    (d) "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and includes both ESI and Non-ESI.

    (e) "Document Family" means any collection of Documents related to each other in a parent-child or sibling relationship, *e.g.*, email-attachment(s), document-embedded file(s), container-contained file(s).

(f) "E-mail" means any means or system for asynchronously transmitting messages electronically. For the avoidance of doubt, this definition includes systems such as Exchange, POP, SMTP, Gmail, and webmail; however, this definition excludes instant messaging systems, SMS or text messages, or other systems designed for real-time messaging or collaboration.

(g) "E-mail Thread" means a series of E-mails related as part of a single conversation, including all replies and forwards, whether or not the individual E-mails within the conversation share identical subject lines.

(h) "Format" means the internal structure of a file.

(i) "Native Format" means the format of ESI in the application in which such ESI was originally created or modified.

(j) "Non-Custodial Data Source" means a system or container that stores ESI, but over which no single individual custodian organizes, manages, or maintains the ESI in the system or container. Examples include enterprise systems, servers, and databases, including systems and databases intended to store information related to financial management, marketing and customer relationship, product management and tracking, and software development or version control.

(k) "Party" means both RetailMeNot, Inc. and Honey Science Corp.

(l) "Producing Party" means a Party that produces documents.

(m) "Receiving Party" means a Party to whom documents are produced.

(n) "Request" means any document request served on the Producing Party in the Litigation pursuant to which the Producing Party has agreed to produce or pursuant to which the Producing Party has been ordered to produce by the Court.

(o) "Responsive Document" means any document, excluding source code, that is responsive to any Request.

(p) "TIFF" refers to the Tagged Image File Format specification version 6.0, preferably using CCITT T.6 bi-level encoding as specified in section 2 of ITU-T Recommendation T.6 (a.k.a. "CCITT Group 4" compression).

(q) "Custodian" means any individual who a Producing Party reasonably believes to have one or more Responsive Documents in the individual's custody, possession, or control.

2. <u>Scope of Preservation and Discovery</u>

(a) On-site inspection of electronic media will not be permitted absent a demonstration by the Requesting Party of specific need and good cause.

(b) The following categories and types of documents are presumed to be not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B) and need not be preserved by any Party:

(i) Deleted, slack, or fragmented data;

(ii) Temporary data stored in a computer's volatile memory, temporary files, cache files, or other ancillary and ephemeral data that are not ordinarily preserved by a computer, server, operating system, or application;

(iii) Data accessible only by forensic techniques;

(iv) Access data such as temporary Internet files, history, cache, and cookies;

(v) Backup data that substantially duplicates data more accessible from non-backup sources;

    (vi) Backup tapes or other long-term storage media created strictly for use as a data backup medium;

    (vii) Recorded voice messages, including voice-mail;

    (viii) Instant messaging communications, including messages sent via Skype or Slack;

    (ix) E-mail stored on a mobile device, provided that a copy of such E-mail is routinely saved elsewhere;

    (x) Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere;

    (xi) Logs of calls made from mobile devices;

    (xii) Server, system, or network logs; and

    (xiii) Data remaining from systems no longer in use by a Party that are unintelligible on systems currently in use by that Party.

  (c) Nothing herein is to suggest that any sources of information or data not specifically excluded here are otherwise discoverable or required to be searched.

  (d) Notwithstanding the foregoing, a Party shall not withhold a non-duplicative, non-privileged responsive Document resulting from a search solely because it falls within a category of presumptively inaccessible documents in Section 2(c), above.

  (e) General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email parties must propound specific email production requests.

  (f) Email production requests shall be by letter and identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians,

proper search terms and proper timeframe. The parties shall endeavor in good faith to tailor the requests to specific issues relevant to this litigation.

(g) Each requesting party shall limit its email production requests to a total of eight custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians per producing party, upon showing a distinct need based on the size, complexity, and issues. Should a party serve email production requests for additional custodians beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, the requesting party shall bear all reasonable costs caused by such additional discovery.

(h) Each requesting party shall limit its email production requests to a total of eight search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues. The search terms shall be narrowly tailored to particular issues.

(i) To the extent applicable, this Stipulated Order is not intended to govern any protections or restrictions related to the production, receipt, or maintenance of source code. The Parties have separately addressed the process for producing and reviewing source code in their Stipulated Protective Order entered on January 9, 2019, D.I. 37 ("Protective Order").

(j) This Stipulated Order is not intended to govern any protections or restrictions related to the production of privileged litigation material, except as provided in Section 4, below.

3. <u>Required Disclosures</u>

(a) By **December 17, 2018**, RetailMeNot, Inc. ("RetailMeNot") shall specifically identify the accused products and the asserted patent(s) they allegedly infringe, and produce the file history for each asserted patent.

(b) By **January 16, 2019**, Honey Science Corp. ("Honey") shall produce to RetailMeNot the core technical documents related to the accused product(s), including but not limited to operation manuals, product literature, schematics, and specifications.

(c) By **February 15, 2019**, RetailMeNot shall produce to Honey an initial claim chart relating each accused product to the asserted claims each product allegedly infringes.

(d) By **March 18, 2019**, Honey shall produce to RetailMeNot its initial invalidity contentions for each asserted claim, as well as the invalidating references (e.g., publications, manuals and patents).

(e) By **January 3, 2018**, Honey shall specifically identify the accused products and the asserted patent(s) they allegedly infringe, and produce the file history for each asserted patent.

(f) By **February 4, 2019**, RetailMeNot shall produce to Honey the core technical documents related to the accused product(s), including but not limited to operation manuals, product literature, schematics, and specifications.

(g) By **March 6, 2019**, Honey shall produce to RetailMeNot an initial claim chart relating each accused product to the asserted claims each product allegedly infringes.

(h) By **April 5, 2019**, RetailMeNot shall produce to Honey its initial invalidity contentions for each asserted claim, as well as the invalidating references (e.g., publications, manuals and patents).

4. <u>Search Methodology and Limitations</u>

(a) The Parties shall propose and use narrowly tailored search terms in order to reduce the volume of ESI to be reviewed and produced while ensuring that responsive information is captured. Indiscriminate terms, such as party names, product names, patents, or inventor names should be avoided unless combined with narrowing search criteria.

(b) For the purpose of counting the number of search terms, a conjunctive combination of multiple terms (using "and," "but not," or "within") shall be considered a single search term. Each term in a disjunctive combination (using "or") shall be considered a separate search term, except that any variations of the same word root or multiple words required to describe the same general concept may be considered a single search term.

(c) The Requesting Party may request the searching and production of Documents from Custodial Data Sources for up to ten (10) persons (the "Requested Custodians"). The Parties may jointly agree to modify these limits. The Court will consider contested requests for additional Custodians as discovery proceeds based upon the Requesting Party's showing of need.

(d) The Parties shall meet and confer regarding the searching and production of Documents from Non-Custodial Data Sources.

(e) *Search Methodology for Custodial and Non-Custodial Data Sources.*

(i) The Parties will cooperate to identify proper search terms, date limitations, and data repositories separately for each Custodial and Non-Custodial Data Source, if applicable.

(ii) If a Producing Party elects to use search terms to locate potentially Responsive Documents for a Requested Custodian or Non-Custodial Data Source, the Producing

Party shall disclose the search terms to the Requesting Party. The Requesting Party may additionally propose up to ten (10) search terms. The search terms shall be narrowly tailored to particular issues, and to the extent necessary, the Parties shall meet and confer to reach agreement on search terms, date limitations, and repositories to be searched. For any contested search terms, date limitations, or repositories, the Producing Party shall provide hit counts quantifying the number of unique additional Documents located by the Requesting Party's proposed search term, date limitation, or repository.

(iii) The Producing Party shall not unreasonably refuse additional requests by the Requesting Party to apply additional search terms for any data source where the circumstances warrant additional searching, provided that such requests are narrowly tailored to the circumstances.

(iv) If a Producing Party does not elect to use search terms to locate potentially Responsive Documents for a Requested Custodian or Non-Custodial Data Source, the Producing Party is obligated to conduct a reasonably diligent search for such ESI.

(f) *Search Methodology for Non-ESI*. If any Non-ESI within a Producing Party's possession, custody, or control are likely to contain Responsive Documents, the Producing Party is obligated to conduct a reasonably diligent search for such documents.

5. <u>Processing of Document for Production</u>

(a) The Producing Party shall collect and process documents using methods that avoid spoliation of data. The Producing Party shall use the following procedures when converting ESI from its Native Format into TIFF files prior to production.

(i) Documents should be rendered such that any annotations, comments, and tracked changes are visible and positioned near the portion of the Document to which the annotation, comment, or tracked change pertains.

(ii) Presentations or slides with presenter's notes should be rendered with the slide and the associated presenter's notes combined on a single page.

(b) Notwithstanding the foregoing, a Producing Party may produce ESI that was produced in a prior litigation in the same manner as it was produced in that litigation. A Receiving Party may seek re-production of any such ESI in accordance with the processing specifications above. The Producing Party should not unreasonably withhold re-production of such ESI, provided it is reasonably available to the Producing Party.

6. Production Format

(a) *ESI Production Format*. Except as provided in Section 6(g), ESI shall be produced electronically, as single-page, uniquely and sequentially numbered TIFF files, with corresponding load files. Except with regard to ESI documents that are redacted for privilege, the images shall be accompanied by text files containing the extracted text on a document basis, if available. Text files shall be accompanied by a means for correlating each produced documents with its text file (such as a Control List or "LST" file). The images shall also be accompanied by an image cross-reference load file (such as an Opticon or "OPT" file) providing the beginning and ending Bates number of each document and the number of pages it comprises. The Producing Party shall also provide a data load file (Concordance or "DAT" file) corresponding to the TIFF files, that shall contain the metadata, as reasonably available, associated with each Production Field specified in Schedule A of this order. There is no obligation on the Producing Party to create metadata where it is not reasonably available or does

not exist. The Parties agree to meet and confer regarding any requests for any metadata not specified in Schedule A or that a Producing Party asserts is not reasonably available or does not exist.

(b) *Production of Non-ESI*. Non-ESI must be converted to and produced in electronic form unless it would be unreasonably burdensome to do so. The Producing Party shall *provide* the same load files described in Section 6(a), above, except that the text files should contain the text of Non-ESI obtained by optical character recognition ("OCR"). There is no obligation to provide metadata associated with Non-ESI other than the Custodian field. If a Non-ESI Document cannot be converted to electronic form without significant cost, damage to or loss of an original Document, or a material reduction in legibility, the parties will meet and confer to arrange production or inspection of the Document at a mutually agreeable time and place.

(c) *Appearance and Content*. Subject to any necessary redaction, each document's TIFF image files shall contain the same information and same physical *representation* as the document did in its original format, whether paper or electronic, consistent with the processing specifications set forth in Section 6.

(d) *Document Unitization*. The unitization of ESI shall be maintained. When converting Non-ESI to electronic form, the Producing Party shall undertake reasonable efforts to ensure that discrete documents are not merged into a single record, and discrete documents are not split into multiple records. Document Family information shall be provided in the DAT, to the extent it is reasonably available.

(e) *Color*. Documents shall be produced in color if the original Document contains color *information*. For the avoidance of doubt, Documents including slides, graphics, charts, visualizations, highlighted text, and text of different colors should be produced in color.

Documents predominantly consisting of text of a uniform color may be produced in grayscale if doing so would result in no material loss of content or legibility.

(f) *Document Numbering*. Each produced TIFF file shall have a legible, unique numeric identifier or "Bates number" not less than six (6) digits and no more than sixteen (16) digits electronically "burned" onto the image at a position on the document that does *not* obscure, conceal, or interfere with any information originally appearing on the document. The Bates number for each document shall have a prefix that identifies the Producing Party (*e.g.*, "RMN000001" or "HONEY000001"). The prefix should be brief and consist solely of letters (*i.e.*, the prefix must not include numbers, spaces, dashes, underscores, or other punctuation). Each Producing Party will use the same prefix throughout this Litigation.

(g) *Production of ESI in Native Format*. In the event that production of a document in TIFF is impractical, the Producing Party shall have the option of producing such *document* in Native Format. In all other instances, after initial production of ESI in TIFF, a party must demonstrate a reasonable basis for production of that ESI in Native Format. In the event that a Receiving Party requests production of Native Format ESI, the Producing Party and the Receiving Party shall negotiate in good faith about the timing, cost and method of such production. The Producing Party shall not unreasonably refuse a request for the production of documents in Native Format.

(h) *Native File Exceptions*. Notwithstanding Section 6(g), above, to the extent a Producing Party produces unredacted spreadsheets (such as Excel files), diagrams or flowcharts (such as Visio files), project management files, audio or video recordings, or vector graphics, such documents shall be produced in their Native Format.

      (i)    *De-duplication*. If identical copies of Documents appear in the files of one or more Custodians, the Producing Party shall attempt to produce only one such identical copy across all Custodians. The Producing Party may use any reasonable method of identifying identical documents, such as comparison of hash values of the contents and/or embedded metadata of Documents. Metadata provided for a Document shall include all Custodians who had identical copies of a Document within their ESI.

      (j)    *Production Volumes*. The Producing Party shall produce document images, load files and metadata via FTP or other mutually agreeable file transfer method. Each *production* volume should be sequentially numbered, and be accompanied by a cover letter or other communication identifying this Litigation, the Producing Party, the date of the production, and the Bates ranges of the documents in that production. The Receiving Party should treat all production volumes as though each contains information subject to the most restrictive provisions of any protective orders entered in this Litigation.

      (k)    *Special-Purpose Software*. To the extent that Documents produced pursuant to this Order cannot be rendered or viewed without the use of software that is not *widely* available, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals which are the property of a third party.

      (l)    *ESI Not Reasonably Accessible*. If a Producing Party contends that any *responsive* ESI is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), that Party shall timely identify such ESI with reasonable particularity and shall provide the Receiving Party with the basis for declining to produce such ESI, including but not limited to (i)

information about the nature of any limitations on access, (ii) the likely costs of producing such ESI, (iii) the method for storing such ESI, and (iv) the places in which such ESI is kept. The parties shall meet and confer concerning the production of any such ESI. Notwithstanding this subsection, a Party need not affirmatively disclose any sources presumptively deemed not reasonably accessible under Section 2(c), above.

7. <u>Third Party Production</u>

The Parties shall serve upon each other all materials received pursuant to any third-party subpoena within five (5) business days of receipt from the third-party. The Parties reserve their rights to modify this provision and/or seek specific accommodations as may become necessary to ensure the receipt of documents procured by subpoena sufficiently in advance of any relevant depositions.

|  |  |
|---|---|
| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | */s/ Jeremy A. Tigan* |
| OF COUNSEL: | Jack B. Blumenfeld (#1014) |
| | Jeremy A. Tigan (#5239) |
| Robert A. Appleby | 1201 North Market Street |
| Jeanne M. Heffernan P.C. | P.O. Box 1347 |
| Jon R. Carter | Wilmington, DE 19899 |
| KIRKLAND & ELLIS LLP | (302) 658-9200 |
| 601 Lexington Avenue | jblumenfeld@mnat.com |
| New York, NY 10022-4611 | jtigan@mnat.com |
| (212) 446-4800 | |
| | *Attorneys for Plaintiff and Counterclaim Defendant RetailMeNot, Inc.* |
| | |
| | RICHARDS, LAYTON & FINGER, P.A. |
| | */s/ Kelly E. Farnan* |
| OF COUNSEL: | Kelly E. Farnan |
| | One Rodney Square |
| Tara D. Elliott | 920 North King Street |
| LATHAM & WATKINS LLP | Wilmington, DE 19801 |
| 555 Eleventh Street, NW | (302) 651-7705 |
| Suite 1000 | farnan@rlf.com |
| Washington, DC 20004 | |
| (202) 637-2200 | *Attorneys for Defendant and Counterclaim Plaintiff Honey Science Corporation* |
| | |
| Lisa K. Nguyen | |
| LATHAM & WATKINS LLP | |
| 140 Scott Drive | |
| Menlo Park, CA 94025 | |
| (650) 328-4600 | |
| | |
| Robert Steinberg | |
| LATHAM & WATKINS LLP | |
| 10250 Constellation Blvd. | |
| Suite 1100 | |
| Los Angeles, CA 90067 | |
| (424) 653-5500 | |
| | |
| January 29, 2019 | |


SO ORDERED this ___ day of _____, 2019.

_____
                                                                                            J.

## SCHEDULE A

Default Metadata to Accompany Productions

| Field | Description |
|---|---|
| Document Beginning Bates Number | |
| Document Ending Bates Number | |
| Family Beginning Bates Number | Bates number of the first page of the first Document in the Family |
| Family Ending Bates Number | Bates number of last page of last Document in the Family |
| Custodian | The first or only Custodian from whom a Document was collected |
| Custodians | The full list of Custodians from whom duplicate identical copies of the same Document were collected |
| Page Count | |
| From | Required for email messages only |
| To | Required for email messages only |
| CC | Required for email messages only |
| BCC | Required for email messages only |
| Email Subject | Required for email messages only |
| Conversation Index | If available |
| Date Received | YYYY-MM-DD |
| Time Received | HH:MM:SS |
| Date Sent | YYYY-MM-DD |
| Time Sent | HH:MM:SS |
| MD5 Hash | |
| Path to File or Message | |
| File Name | |
| File Extension | |
| File Size | Numeric only, in bytes |
| Author (Created By) | From application or operating system metadata |
| Author (Modified By) | From application or operating system metadata |
| Title | From application or operating system metadata |
| Date Created | YYYY-MM-DD |
| Time Created | HH:MM:SS |
| Date Last Modified | YYYY-MM-DD |
| Time Last Modified | HH:MM:SS |
| Native File | Path to native file in production volume |
| Full Text | Path to document extracted or OCR text |
| Production Volume | |
| Confidentiality Label | |